## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| MARIA RUEDA, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-10-4937 |
| § | |
| TECON SERVICES, INC., § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

This a Fair Labor Standards Act collective action for unpaid overtime wages. The parties agreed that a class of Tecon Services, Inc. hourly employees who performed manual labor at Tecon's Garrett Yard facility in Houston, Texas should be conditionally certified. The plaintiffs now move to extend the collective action certification to include all nonexempt Tecon hourly employees who performed manual labor. (Docket Entry No. 27). Tecon has responded, arguing that collective action treatment is inappropriate beyond the Garrett Yard facility. (Docket Entry No. 40). The plaintiffs replied. (Docket Entry No. 41).[1] Based on the record; the motion, response, and reply; and the relevant law, this court denies the motion for extended conditional certification. The reasons are explained below.

**I.    Background**

Tecon applies coatings for industrial manufacturing throughout the country. Tecon employs approximately 3,000 manual laborers, 300 of whom work at the Garrett Yard. The named plaintiffs are hourly nonexempt Tecon employees who performed manual labor at the Garrett Yard. Some of

---

[1] Tecon requested for an extension of time to respond so that it could depose the plaintiffs. (Docket Entry No. 33). The motion is denied as moot.

the named plaintiffs also worked on Tecon projects or at Tecon facilities other than the Garrett Yard. All the plaintiffs allege that Tecon failed to pay them and other similarly situated hourly employees overtime even though they regularly worked more than 40 hours per week.

The parties agreed to certify a class consisting of hourly workers who performed manual labor at the Garrett Yard. (Docket Entry No. 28). Tecon admits that its fireproofing employees at that location worked unpaid overtime hours. The plaintiffs now seek to certify a class of all manual laborers who worked for Tecon, extending the certification to a subclass of hourly employees who worked on a Tecon project at a facility besides the Garrett Yard. They rely on affidavits from three plaintiffs and a former Tecon human-resources employee, Agustin Rueda. (Docket Entry Nos. 27-1, 27-2, 27-3, 27-4). Tecon responds that the affidavits fail to provide a reasonable basis to extend the conditional certification to this additional subclass.

The arguments are analyzed below.

## II.    The Conditional Certification Standard

The FLSA mandates that a covered employee be paid one and one half times the hourly rate for hours worked beyond forty hours each week. 29 U.S.C. § 207(a)(1); *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 476 (1948); *Houston Police Officers' Union v. City of Houston*, 330 F.3d 298, 300 (5th Cir. 2003); *Garza v. Smith Int'l, Inc.*, Civ. A. No. C–10–100, 2011 WL 338819, at *1 (S.D. Tex. Feb. 2, 2011); *Halford v. No Hope Logging, Inc.*, 727 F. Supp. 2d 523, 527 n.3 (S.D. Miss. 2010). Section 216(b) of the FLSA creates a cause of action for employees against employers. 29 U.S.C. § 216(b). Section 216(b) provides:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to

>become such a party and such consent is filed in the court in which such action is brought.

*Id.* Section 216(b) establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). District courts have discretion in deciding whether to order notice to potential plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 808 (S.D. Tex. 2003).

Notice does not issue unless a court conditionally certifies the case as a collective action. Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step *Lusardi* approach and the class action–based *Shushan* approach. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990). Most courts, including district courts in this circuit, use the "two-step *ad hoc* approach" as the preferred method for the similarly situated analysis, rather than the Rule 23 requirements. *See, e.g.*, *Maynor v. Dow Chemical*, 671 F. Supp. 2d 902, 930–31 (S.D. Tex. 2009); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004) (stating that most courts have employed or implicitly approved the two-step method); *Basco v. Wal-Mart Stores Inc.*, Civ. A. No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) (noting that "the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23"); *Mooney*, 54 F.3d at 1217 (declining to mandate either theory); *LaChapelle v. Owens-Ill., Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (finding a fundamental difference between Rule 23 class actions and FLSA collective

actions).

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Mooney*, 54 F.3d at 1213. The first step of analysis is the "notice stage," in which the district court decides whether to issue notice to potential class members. *See id.* at 1213–14. The court's decision at this stage is often based only on the pleadings and affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt in. *Id.* at 1214 n.8. Even this lenient standard appears to require substantial allegations that potential members "were together the victims of a single decision, policy, or plan." *Id.* (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. *See Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007). A factual basis for the allegations is needed to satisfy the first step. *See Hall v. Burk*, No. Civ. 301CV2487H, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden."); *see also Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983).

At the first stage, there must be a showing of "some identifiable facts or legal nexus [that]

bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D. Or. 2002)); *see also Basco*, 2004 WL 1497709, at *5 (quoting *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (stating that certification is appropriate when some factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron*, 242 F. Supp. 2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214. The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally-certified class. *See id.*; *Lusardi*, 118 F.R.D. at 359. At that point, the court makes a factual determination as to whether there are similarly situated employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney*, 54 F.3d at 1214; *Basco*, 2004 WL 1497709, at *3. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England*, 370 F. Supp. 2d at 508.

**III.    Analysis**

Conditional certification is a lenient standard but does require a reasonable basis to conclude that class members are similarly situated. Many courts have stated that putative class members must

5

show that they were affected by a common policy, plan, pattern, or practice to satisfy the "similarly situated" inquiry. *See, e.g.*, *O'Brien v. Ed Donnelly Enters., Inc.*, No. 2:04-CV-00085, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006) (citations omitted) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs."); *England*, 370 F. Supp. 2d at 507 (a court may refuse to allow plaintiffs to proceed collectively if the action arises from circumstances purely personal to the plaintiffs and not from any generally applicable rule, policy, or practice); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 95–97 (S.D.N.Y. 2003) (citations omitted) (a plaintiff must allege a common policy or plan and establish a sufficient factual nexus between his situation and the situation of the proposed classed members); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139 n.6 (D. Nev. 1999) ("In order to be similarly situated, the action must not be distinct and specific to individual plaintiffs; rather, there must be some general policy or practice."). A plaintiff must demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists. *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007). Uniformity is clearly not necessary. "[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance) [,so] a unified policy, plan, or scheme of discrimination may not be required to satisfy . . . § 216(b)." *Grayson*, 79 F.3d at 1095; *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534–35 (S.D. Tex. 2008) (collecting cases).

Tecon concedes that, for a period, it had a policy of not paying overtime at the Garrett Yard. Tecon contends, however, that the policy was limited to the Garrett Yard. Tecon's president, Pillip C. Pickens, testified that "all of [Tecon's] employees have been paid overtime wages in accordance

with the Fair Labor Standards Act, with the exception of . . . those employees who worked at [the Garrett Yard]." (Docket Entry No. 40-1). Pickens testified that the problem arose at the Garrett Yard in response to the work load there, which was heavier than could be completed in a single shift. Tecon decided, with its employees agreement, not to switch to a double shift. Instead, the employees would work more than 40 hours per week without receiving overtime. This arrangement allowed Tecon to meet demand without paying overtime while allowing the employees to earn more money than they would have had Tecon switched to a two-shift system. Pickens acknowledges that the policy was illegal but insists that it was "limited to the Garrett [Yard]."

FLSA violations at one of a company's multiple locations generally are not, without more, sufficient to support company-wide notice. *See Trinh v. J.P. Morgan Chase & Co.*, No. 07-CV-1666 W(WMC), 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008) ("At most, Plaintiffs' affidavits establish a few similarities in training and compensating rookie sub-prime loan officers in the singular Southern California market. Plaintiffs provide no real evidence, beyond their own speculative beliefs, suggesting that all JPMorgan loan officers across the country, regardless of location or experience, receive the same compensation and are required to work in the same manner."); *Sheffield*, 211 F.R.D. at 417 (denying certification of a class made up of employees of parent corporation and its subsidiaries and affiliates throughout the United States, because factual differences existed between overtime pay practices and job descriptions in different units and subsidiaries); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362–63 (M.D. Ala. 1999) (refusing to include in a class employees of chains other restaurants when the evidence of FLSA violations was limited to a single restaurant); *Brooks v. Bellsouth Telecomms.*, 164 F.R.D. 561, 566–67 (N.D. Ala. 1995) (refusing to certify a class consisting of management employees in "any unit, division

or subsidiary" of the employer, when the proffered evidence was insufficient to support the allegation of an overarching discriminatory pattern); *Tucker*, 872 F. Supp. at 948 (finding that the plaintiffs had failed to show that employees working at truck terminals other than the terminal where the named plaintiffs worked were similarly situated to those plaintiffs). A broad geographic scope or numerous locations is not, however, enough to defeat certification across locations. *See Donohue v. Francis Servs., Inc.*, No. Civ. A. 04-170, 2004 WL 1406080 (E.D.La. June 22, 2004) (holding that employers should not be able to "escape FLSA liability by making sure to underpay vast numbers" of their employees and then claim that the class definition is too broad). If there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate. *Vargas v. Richardson Trident Co.*, Civ. A. No. H-09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010); *Falcon*, 580 F. Supp. 2d at 539–40 (certifying a class even though they were store managers working in various locations under supervision of different individuals because there was evidence of a common policy); *Blake v. Colonial Savings, F.A.*, Civ. A. No. H-04-0944, 2004 WL 1925535 (S.D. Tex. Aug. 16, 2004) (approving notice to loan officers in the defendant's Dallas office and those in remote locations based on evidence that unlawful overtime policies applied to all locations).

The plaintiffs offer four affidavits in support of conditional certification of a subclass of employees working outside the Garrett Yard. The first affidavit is from Agustin Rueda, a Tecon human resources employee until September 2010. (Docket Entry No. 27-1). Rueda helped to locate workers for Tecon projects across the country, but he did not have payroll responsibilities. Rueda testified that he "received frequent complaints from various workers at Tecon that they were not being paid all their wages and that they were not being paid for all the hours that they worked."

8

Rueda estimated that he received approximately one complaint per week over a three-year period. (*Id.*, ¶ 8). "These complaints came from the Garrett Yard workers, as well as the Tecon workers who worked at other Tecon jobs and projects . . . ." (*Id.*). Rueda offered no estimate of how many of these complaints came from workers who worked outside the Garrett Yard. He testified that he reported the complaints to Curtis Ford, Tecon's project manager, who "pretty much ignored the complaints" or told him to discuss the complaints with "Diane in payroll." (*Id.*, ¶ 8). Rueda testified that he "mentioned these complaints to Diane on occasion, but I'm not sure what, if anything, she did about the complaints because the complaints continued." (*Id.*). Rueda asserted that unpaid overtime "was a serious and ongoing problem at Tecon with respect to the workers at the Garrett Yard facility and the other Tecon jobs and projects." (*Id.*).

Three plaintiffs, Alvaro Garcia, Palacios Zabala, and Maria Rueda, offer substantially similar affidavits. (Docket Entry Nos. 27-1, 27-2, 27-3). Each worked at the Garrett Yard and at other facilities and projects for Tecon. Each claimed not to have received overtime when working at the Garrett Yard and when performing assignments at other locations. Each asserted awareness "of other workers who worked outside of Garrett Yard also complaining like me that they were not paid overtime wages and they were not paid for all the hours that they worked."

These affidavits do not support certification of a subclass of thousands of Tecon employees who performed manual labor outside the Garret Yard in Houston. There is insufficient evidence that employees who worked outside the Garrett Yard were undercompensated because of a common policy. Reports that a company underpays overtime may suggest that the underpayment results from a common policy, but courts do not grant conditional certification without additional evidence that the plaintiffs are similarly situated. *See, e.g.*, *Trinh*, 2008 WL 1860161, at *4 (finding the affiants'

9

"speculative beliefs" that other workers were similarly situated insufficient). The plaintiffs have not presented sufficient evidence of a policy of denying overtime pay outside the Garrett Yard to meet even the low burden required for conditional certification. *Cf. Sandoz v. Cingular Wireless, LLC*, — F. Supp. 2d —, Civ. A. No. 07-1308, 2010 WL 2232634, at *10 (W.D. La. 2010) (denying reconsideration when the plaintiff produced a copy of a national policy requiring no payment of overtime). There is no reasonable basis to conclude that the policies at the Garrett Yard, which the uncontroverted evidence shows emerged from the conditions at that site, applied at other Tecon locations or projects. Nor is there a reasonable basis to conclude that the denial of overtime pay resulted from a common policy different from the policy that led to the FLSA violations at the Garrett Yard. The plaintiffs have provided no information about the nature of the work they performed elsewhere or about the workplace practices that allegedly resulted in undercompensation. *Yaklin v. W-H Energy Servs., Inc.*, Civ. A. No. C-07-422, 2008 WL 1989795, at *1 (S.D. Tex. May 2, 2008) (finding that an affidavit that "fail[ed] to discuss the job responsibilities and payment provisions of his allegedly similarly situated peers" did not weigh in favor of certification); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, Civ. A. No. C-07-422, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008) (noting that employees may not be similarly situated when their job duties vary significantly). The plaintiffs do not state whether they requested overtime and were unpaid, were discouraged from reporting overtime, or suffered from inaccurate timekeeping measures when working outside the Garrett Yard. *Cf. Gonzalez v. Ridgewood Landscaping, Inc.*, Civ. A. No. H-09-2992, 2010 WL 1903602, at *7 (S.D. Tex. May 10, 2010) (finding that a single payroll administrator coupled with the failure to provide an accurate punch-clock weighed in favor of certification). Garcia, Zabala, and Maria Rueda provide no information about employees at other locations beyond

assertions that they heard others worked unpaid overtime hours. *See Tucker*, 872 F. Supp. at 948 (finding three employees' reports that other employees had not been paid overtime insufficient because they provided no information concerning job duties or pay provisions). The "mere fact that violations occurred cannot be enough to establish similarity." *Barron*, 242 F. Supp. 2d at 1104.

Agustin Rueda's testimony does not cure these deficiencies. Rueda asserted that Tecon employees complained to him about not receiving overtime pay approximately once a week. He stated that some of these complaints came from employees who did not work in Houston. There is no basis to estimate how many of these complaints came from employees who worked in places other than the Garrett Yard. Nor is there a reasonable basis to conclude that the employees working outside the Garrett Yard were denied overtime pay as a result of, or under, a common policy. Tecon's president testified, and the plaintiffs do not dispute, that Agustin Rueda "did not have access to payroll records." (Docket Entry No. 40-1 at 2); *cf. Vargas*, 2010 WL 730155, at *10 (relying on an employee's declaration that she had reviewed pay records at locations outside Houston and determined that employees worked more than 40 hours per week but were not paid overtime). Agustin Rueda's testimony about complaints from different employees provides no information about the duties of the complaining employees, the conditions under which they worked, or how their compensation was determined. *See Green v. Plantation of La., LLC*, Civ. No. 2:10-0364, 2010 WL 5256354, at *9 (W.D. La. Nov. 24, 2010) (denying conditional certification because the proposed class plaintiffs "were not uniformly compensated in accordance with any set or standardized policy"). Like the plaintiffs' affidavits, Agustin Rueda's affidavit does not provide a reasonable basis to conclude that Tecon's manual laborers who were not compensated for work performed outside Houston were similarly situated.

11

## IV.     Conclusion

The motion for an extension of the conditional certification is denied.

SIGNED on June 28, 2011, at Houston, Texas.

                                        Lee H. Rosenthal
                                  United States District Judge